UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| ASHOK KUMAR CHEEJATI, ET AL. § | |
| § | |
| v. § | CIVIL NO. 4:23-CV-600-SDJ |
| § | |
| ANTONY BLINKEN, Secretary, § | |
| United States Department of State, § | |
| ET AL. § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs in this case are thirty-two Indian nationals with approved immigrant visas, each of whom has applied for an adjustment of status to become a lawful permanent resident of the United States—that is, a green card holder. Plaintiffs have sued the United States Department of State (DOS) and United States Citizenship and Immigration Services (USCIS), generally complaining of undue delays in the adjudication of their green-card applications.

But before the Court today is a much larger ask than an order compelling the accelerated disposition of these Plaintiffs' green-card applications. Plaintiffs have filed their "Motion for a Temporary Restraining Order or Preliminary Injunction," (Dkt. #4), seeking emergency injunctive relief that would fundamentally alter the United States' existing system for allocating immigrant visas. Specifically, Plaintiffs ask the Court to enjoin the DOS and USCIS from applying what Plaintiffs characterize as DOS and USCIS's "Retrogression Hold Policies." As will be explained further, the complained-of retrogression is part of DOS and USCIS's processes concerning the timing of green-card adjudication when the demand for visas, whether

1

by category of visa or country of the applicant's origin, exceeds the supply of available visas.

The motion will be denied because Plaintiffs' claims are unlikely to succeed on the merits—indeed the Court likely lacks subject-matter jurisdiction to decide the claims—and Plaintiffs also cannot meet any of the other requirements for injunctive relief.

The proposed legal theory underlying Plaintiffs' request turns on the Administrative Procedure Act (APA), which allows courts to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). However, "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64, 124 S. Ct. 2373, 159 L.Ed.2d 137 (2004) ("*SUWA*"). "A court's authority to compel agency action is limited to instances where an agency ignored 'a specific, unequivocal command' in a federal statute or binding regulation." *Fort Bend Ctny. v. U.S. Army Corps of Eng'rs*, 59 F.4th 180, 197 (5th Cir. 2023) (quoting *SUWA*, 542 U.S. at 63). Because the "Retrogression Hold Policies" do not run afoul of any "specific, unequivocal command" of federal law, Plaintiffs' APA-based challenge has no chance of success. And, unsurprisingly, the same challenges to so-called DOS and USCIS "retrogression hold" policies have already been asserted and rejected by courts across the country.[1]

---

[1] *See, e.g.*, *Museboyina v. Jaddou*, No. 4:22-CV-3169, 2022 WL 4608264, at *3–*5 (D. Neb. Sept. 30, 2022) (finding that plaintiffs had failed to establish a likelihood of success in their challenge against so-called visa retrogression policies); *Babaria v. Blinken*, No. 22-CV-

Equally unpersuasive are Plaintiffs' allegations of irreparable harm, which turn entirely on (1) speculation that elimination of the complained-of retrogression process would speed up the adjudication of their green-card applications, which may or may not be true, and (2) alleged inconveniences associated with their current immigrant status that do not rise to the level of irreparable harm. Given the meritless nature of Plaintiffs' claims and their lack of irreparable harm, as compared to the dramatic alteration in immigrant-visa-adjudication procedures proposed in their motion, the balance of equities weighs heavily against Plaintiffs. Likewise, the disruption to established visa-adjudication procedures contemplated by Plaintiffs would disserve the public interest. Accordingly, their request for injunctive relief will be denied.

## I. BACKGROUND

### A. Plaintiffs Seek Lawful Permanent Residence in the United States.

Plaintiffs are lawful immigrants from India. They moved here under the EB-3 employment visa, which applies to a broad category of "[s]killed workers," "professionals," and "other workers." 8 U.S.C. § 1153(b)(3). And they have all applied for lawful permanent residence in the Unites States by requesting an adjustment of status from USCIS through a Form I-485; thus, they have applied for what is

---

05521-SI, 2022 WL 10719061, at *5–6 (N.D. Cal. Oct. 18, 2022) (same); *Mukkavilli v. Jaddou*, No. 22-CV-2289, 2023 WL 4029344, at *10 (D.D.C. June 15, 2023) (dismissing for lack of subject-matter jurisdiction unlawful withholding claims involving the same retrogression policies at issue here).

"colloquially known as a 'green card.'" *Mantena v. Johnson,* 809 F.3d 721, 723, 725 (2d Cir. 2015).

## B. Adjustment of Status and Visa Retrogression

The Immigration and Nationality Act (INA), 8 U.S.C. §§ 1101–1537, governs how aliens[2] obtain immigrant visas to seek admission into and permanently reside in the United States. At issue here is Title 8 U.S.C. § 1255, which provides the Secretary of Homeland Security with discretionary authority, under such regulations

---

[2] Although the Government and Plaintiffs have used the term "noncitizen" in their filings, rather than "alien," the Court sees no reason to depart from the language employed by Congress in the applicable statutory law. *See, e.g.*, 8 U.S.C. § 1101(a)(3) ("The term 'alien' means any person not a citizen or national of the United States."). There are several good reasons why this is so. First, as noted by Judge Bea of the Ninth Circuit, the words "noncitizen" and "alien" do not carry the same meaning. *Avilez v. Garland*, 69 F.4th 525, 543 (9th Cir. 2023) (Bea, J., concurring) (observing that "alien" and "noncitizen" are not "interchangeable").

Second, it is the prerogative of Congress to choose the precise language used in federal statutes, and it makes good sense to apply federal laws using the same terminology employed by the Legislature. *See id.* at 544 (Bea, J., concurring) (observing that courts should "hew closely to the laws as they are written, both in form and in substance"). As relevant here, the term "alien" has appeared throughout the INA since it was enacted, and although Congress has routinely amended statutes addressing immigration issues, to the present day it also has consistently used the word "alien" to describe individuals who are not U.S. citizens or nationals. *See, e.g.,* Energy Security & Lightering Independence Act of 2022, Pub. L. No. 117-360, January 5, 2023, 136 Stat. 6292 (amending "the Immigration and Nationality Act to include *aliens* passing in transit through the United States to board a vessel on which the *alien* will perform ship-to-ship liquid cargo transfer operations within a class of nonimmigrant *aliens*, and for other purposes." (emphases added)).

Third, as demonstrated by the continued and pervasive use of the term by Congress in this context, "[t]here's no need to be offended by the word 'alien.' It's a centuries-old legal term found in countless judicial decisions." *Khan v. Garland*, 69 F.4th 265, 272 (5th Cir. 2023) (Ho, J., concurring in judgment); *see also id.* (Ho, J., concurring in judgment) ("[W]e always read words in their proper context. And in the context of immigration law, we use 'alien,' not to disparage one's character—or to denote one's planetary origin—but to describe one's legal status . . . . [There is] no need to bowdlerize statutes or judicial decisions that use the word 'alien' by substituting terms like 'non-citizen'").

4

as the Secretary may prescribe, to adjust the status of certain aliens to lawful permanent residence.[3]

Section 1255(a) provides several prerequisites that must be satisfied before the Secretary may exercise his discretion to confer permanent residence status, which include the following: "(1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed." 8 U.S.C. § 1255(a). When the INA was first enacted in 1952, the requirements for eligibility under this section included a requirement that a visa be immediately available both at the time of filing and at the time of adjudication of the application. INA, Pub. L. No. 414-163, § 245(a) (1952). In 1960, Congress amended Section 1255(a) to delete the requirement that a visa number be available at the time of filing. INA, Pub. L. No. 86-648, § 10 (1960). Then, in 1976, Congress reinstated the statutory requirement that a visa be available at the time of filing and removed the requirement that a visa be immediately available at the time of adjudication of the application. INA, Pub. L. No. 94-571, § 6 (Oct. 20, 1976). Plaintiffs assert that, by removing the statutory requirement that a visa number be immediately available at the time of adjudication, Congress prohibited the government from imposing such a requirement.

---

[3] Although the statute refers to the Attorney General, authority has been transferred to the Secretary of Homeland Security. *See* 6 U.S.C. §§ 271(b)(5), 557; 8 C.F.R. § 245.2(a); *Dong v. Chertoff*, 513 F. Supp. 2d 1158, 1162 n.3 (N.D. Cal. 2007).

For their part, DOS and USCIS have pointed to 8 U.S.C. § 1255(b) as evidence that Congress requires visas to be allocated at the time of approval. They further argue that this requirement is inconsistent with Plaintiffs' argument. Section 1255(b) requires that, upon approval of an application for adjustment of status:

> [T]he Attorney General shall record the alien's lawful admission for permanent residence as of the date the order of the Attorney General approving the application for the adjustment of status is made, and the Secretary of State shall reduce by one the number of the preference visas authorized to be issued under sections 1152 and 1153 of this title within the class to which the alien is chargeable for the fiscal year then current.

8 U.S.C. § 1255(b). As DOS and USCIS note, because Section 1255(b) mandates that, after an adjustment of status application is approved, the Secretary of State must "reduce by one" the number of relevant visas that can be issued, it is a logical necessity that—when no visas are currently available to be reduced from the visa pool—an adjustment of status application must remain pending until a new visa becomes available. *See Museboyina v. Jaddou*, No. 4:22-CV-3169, 2022 WL 4608264, at *4 (D. Neb. Sept. 30, 2022) ("The Secretary obviously could not make such a reduction in the number of preference visas authorized if they are not available."). Thus, DOS and USCIS have confirmed that an applicant's status will be adjusted only if the applicant has properly filed an I-485 application, a visa number was immediately available at the time of filing, and a visa number is immediately available at the time of adjudication. (Dkt. #17 at 5) (citing 8 U.S.C. § 1255(a)–(b); 8 C.F.R. §§ 245.1(g), 245.2(a)(2)(i)(A)–(C) and (a)(5)(ii)); *see also Koppula v. Jaddou*, No. 1:22-CV-844-RP, 2023 WL 3470904, at *2 (W.D. Tex. May 15, 2023).

DOS further notes that it is responsible for allocating immigrant visas within the limits set by Congress. 22 C.F.R. § 42.51. Congress has provided for DOS to "make reasonable estimates of the anticipated number of visas to be issued during any quarter of any fiscal year . . . and to rely upon such estimates in authorizing the issuances of visas." 8 U.S.C. § 1153(g). When demand for immigrant visas in a particular category (in this case, EB-3 visas for Indian nationals) exceeds the number of visas available, DOS considers the category oversubscribed and imposes a "final action date." Only applicants with priority dates before the final action date are considered to have visa numbers available and can apply and be approved for visas. DOS publishes the cut-off dates in its monthly visa bulletin. The final action date will move forward as more visas become available; however, if demand rises above the number of visas available the dates may move backwards. This backwards movement is known as retrogression.

When a particular category retrogresses, an applicant whose priority date was previously before the cut-off may find that his priority date is now after the cut-off. Even if that applicant filed his I-485 while a visa was available, USCIS will not approve the adjustment until the cut-off date once again progresses beyond the applicant's priority date. Until that time, the application remains pending.

**C. Plaintiffs File Suit to Avert Retrogression.**

Here, Plaintiffs' pending adjustment of status applications will be retrogressed as of July 1, 2023. That means the final action date for Plaintiffs EB-3 preference category, chargeable to India, will move backward from June 15, 2012, to January 1, 2009.

7

To prevent their pending applications from being "retrogressed," Plaintiffs filed a complaint and their emergency motion with the Court. (Dkt. #1, #4). The complaint asserts claims under the APA and requests the following rulings: (1) that USCIS be directed to adjudicate the pending adjustment of status applications within six months; (2) that DOS be directed to issue visa numbers following approval of those applications; and (3) that the "Retrogression Hold Policies" be declared unlawful. (Dkt. #1 ¶¶ 113–21). The emergency motion requests that the Court enter a preliminary injunction broadly prohibiting DOS and USCIS from enforcing the retrogression hold policies pending a ruling on summary judgment.[4] (Dkt. #4 at 18). The Government has appeared in the case and responded to the emergency motion. (Dkt. #17).

It is not entirely clear from Plaintiffs' filings how long their applications for adjustment of status have been pending. But it appears that most of them have been pending for at least several months and that some of them may have been pending for a longer period of time. *See, e.g.*, (Dkt. #4 at 3) (indicating that USCIS "has been working on adjudicating" Plaintiffs' adjustment of status forms "[o]ver the last couple of years").

---

[4] As an alternative to a preliminary injunction, the emergency motion also requests a temporary restraining order. Temporary restraining orders are treated as "accelerated" preliminary-injunction motions and evaluated under the same factors. *Sharing Servs. Glob. Corp. v. Oblon*, No. 4:20-CV-989-SDJ, 2021 WL 3410670, at *1 (E.D. Tex. Jan. 8, 2021). Because the Court denies the requested preliminary injunction, it follows that the requested temporary restraining order must be denied as well.

## II. LEGAL STANDARD

A preliminary injunction is an "extraordinary and drastic remedy." *Anderson v. Jackson*, 556 F.3d 351, 360 (5th Cir. 2009) (quotation omitted). To issue such relief, a court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 24, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008) (quotation omitted). And only when the movant has "clearly carried the burden of persuasion" should a court grant preliminary injunctive relief. *Anderson*, 556 F.3d at 360.

In order to obtain a preliminary injunction, a movant must establish the following factors: (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest. *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011). If the movant fails to establish any one of these factors, the movant cannot obtain injunctive relief. *See Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 196 (5th Cir. 2003) (explaining that a preliminary injunction "should not be granted unless the party seeking it has clearly carried the burden of persuasion on all four requirements" (quotation omitted)).

Preliminary injunctions are "particularly disfavored" when they impose "mandatory" relief against a party: meaning, that they require the party to do more than simply maintain the status quo. *See Roark v. Individuals of Fed. Bureau of Prisons, Former & Current*, 558 F.App'x 471, 472 (5th Cir. 2014) (per curiam) (quoting

*Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976)); *see also Exhibitors Poster Exch., Inc. v. Nat'l Screen Serv. Corp.*, 441 F.2d 560, 561 (5th Cir. 1971) (per curiam) ("The purpose of a preliminary injunction is to preserve the status quo and thus prevent irreparable harm . . . ."). And here, Plaintiffs seek injunctive relief not in order to maintain the status quo, but rather to force DOS and USCIS to dramatically alter established processes for allocating immigrant visas.

### III. DISCUSSION

Plaintiffs have not established the necessary grounds for entering a preliminary injunction. The Court begins by addressing whether Plaintiffs have established a strong likelihood of success on the merits. The Court then turns to the remaining factors for evaluating a preliminary injunction motion.

**A. Likelihood of Success on the Merits**

Far from establishing a strong likelihood of success on the merits, Plaintiffs' filings demonstrate the opposite: that the case will likely be dismissed at the outset for lack of subject-matter jurisdiction.

To prevail on an unlawful withholding claim under the APA, Plaintiffs must demonstrate not only that the Defendants failed to perform discrete actions, but also that the Defendants were indisputably required to perform those actions under the relevant statutes. *See* 5 U.S.C. § 706(1); *SUWA*, 542 U.S. at 64 (holding that a claim for unlawfully withheld government action "can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*."). If the relevant statutes impose no clear duty on the Defendants to act—or if the relevant statutes commit that decision to the "agency's discretion" or expressly "preclude[d]

[judicial] review"—then the Court must dismiss any challenge to Defendants' refusal to act for lack of subject matter jurisdiction. 5 U.S.C. § 706(1). "A court's authority to compel agency action is limited to instances where an agency ignored 'a specific, unequivocal command' in a federal statute or binding regulation." *Fort Bend Cnty.*, 59 F.4th at 197 (quoting *SUWA*, 542 U.S. at 63); *see also Mysaev v. U.S. Citizenship & Immigr. Servs.*, No. 3:22-CV-0371-B, 2022 WL 2805398, at *4 (N.D. Tex. July 18, 2022) ("[J]urisdiction under the APA is appropriately exercised only if [the alien] can establish that the Defendants had a clear, non-discretionary duty to adjudicate his [adjustment of status] application within a certain period.").

Here, Plaintiffs have not established that there is any "unequivocal command" in federal law for DOS and USCIS to adjudicate their green-card applications by a particular date or to adjudicate those applications without regard to the current availability of visas. To the contrary, Section 1255(a) confers broad authority on the Secretary to approve adjustment of status applications at his "discretion" and "under such regulations as he may prescribe," if the applicant meets certain requirements. 8 U.S.C. § 1255(a). As the Fifth Circuit explained in *Bian v. Clinton*, Section 1255 "does not specify a deadline or even a time frame for adjudication of applications, instead committing not only the USCIS's decision but also any 'regulations' necessary for making such a decision to agency discretion." 605 F.3d 249, 253 (5th Cir. 2010), *vacated as moot*, No. 09-10568, 2010 WL 3633770 (5th Cir. Sept. 16, 2010).[5] The *Bian*

---

[5] *Bian* was admittedly vacated as moot and therefore lacks precedential value. *Balfour Beatty Constr., L.L.C. v. Liberty Mut. Fire Ins. Co.*, 968 F.3d 504, 516 n.20 (5th Cir. 2020) (citing *Asgeirsson v. Abbott*, 696 F.3d 454, 459 (5th Cir. 2012)). Even so, the Court treats its reasoning as persuasive, as have other district courts in this circuit. *See, e.g., Chuttani v.*

11

Court further concluded that the Government's discretion extended not only to its ultimate decision, but also to its adjudicative process: including its policy of refusing to grant "adjustments of status until visa numbers be available"—precisely the same policy challenged in this case. *Id.* at 253–55. Thus, the court upheld USCIS's refusal to approve an adjustment of status under that policy even though the agency conceded that the alien otherwise met the statutory requirements for approval. *Id.* at 251; *see also Koppula*, 2023 WL 3470904, at *2 (dismissing for lack of subject-matter jurisdiction plaintiffs' claims seeking to compel action on pending adjustment of status applications).[6]

There is also nothing in Section 1255(a)'s text that precludes the retrogression procedures complained-of by Plaintiffs, or the premise of the procedure that Plaintiffs' applications, like those of other similarly situated applicants, will be adjusted only when a visa number is immediately available at the time of adjudication. Recall that Section 1255(a) allows for an adjustment when "(1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is

---

*U.S. Citizenship & Immigr. Servs.*, No. 3:19-CV-02955-X, 2020 WL 7225995, at *3 n.22 (N.D. Tex. Dec. 8, 2020) (treating *Bian* as "[a]t the very least, . . . highly persuasive."); *Khokha v. U.S. Citizenship & Immigr. Servs.*, No. 3:21-CV-2577-L, 2021 WL 5742329, at *3 (N.D. Tex. Dec. 2, 2021) ("While this decision by the Fifth Circuit was subsequently vacated when motions to dismiss the appeal as moot were filed, the undersigned finds this well-reasoned decision persuasive."); *Dommaraju v. Thompson*, No. 3:21-CV-2585-S, 2021 WL 5104375, at *1 (N.D. Tex. Oct. 28, 2021) ("[W]hile the Fifth Circuit vacated that appeal and opinion due to mootness, its logic remains sound and persuasive.").

[6] In a recent unpublished decision, the Fifth Circuit again found that USCIS is under "no clear mandate" to adjudicate adjustment of status applications at any particular pace. *Li v. Jaddou*, No. 22-50756, 2023 WL 3431237, at *1 (5th Cir. May 12, 2023) (per curiam). The court upheld dismissal under Rule 12(b)(6) without addressing the question of subject-matter jurisdiction. *Id.*

admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed." 8 U.S.C. § 1255(a). According to Plaintiffs, because in 1976 Congress deleted the additional requirement that an immigrant visa be immediately available to an applicant at the time of approval, DOS and USCIS are prohibited from conditioning the allocation of the adjustment on the availability of a visa at the time of approval. Plaintiffs misread the statute's plain text. The requirements of Section 1255(a) establish a *floor*, not a *ceiling*, on the considerations for approval of an application for adjustment; that is to say, the statute provides that the Secretary "may" adjust an applicant's status only "if" the applicant meets the stated requirements in Section 1255(a). Beyond those requirements, Section 1255(a) "says nothing about whether a visa must be available at the time an application is approved." *Museboyina*, 2022 WL 4608264, at *4; *Babaria v. Blinken*, No. 22-CV-05521-SI, 2022 WL 10719061, at *5 (N.D. Cal. Oct. 18, 2022) (same).

Because no statutory language supports their argument, Plaintiffs "spin[] out an argument based on § 1255(a)'s structure and history," concluding it was Congress's intent knowingly to reject the requirement to have a current visa number at approval. *Mukkavilli v. Jaddou*, No. 22-CV-2289, 2023 WL 4029344, at *10 (D.D.C. June 15, 2023). Like other courts that have considered this argument, the Court "declines to draw inferences about Congress's intent, especially where those inferences stem from statutory silence." *Id.* (citing *Oklahoma v. Castro-Huerta*, 142 S. Ct. 2486, 2496–97, 213 L.Ed.2d 847 (2022)).

For all of these reasons, Plaintiffs have little or no likelihood of success on the merits.[7]

## B. The Remaining Preliminary Injunction Factors

It follows from the Court's reasoning on the first preliminary injunction factor that Plaintiffs cannot meet the remaining three factors either. To begin, Plaintiffs have not demonstrated a risk of irreparable harm. Irreparable harms mean those harms for which "there is no adequate remedy at law." *See Louisiana v. Biden*, 55 F.4th 1017, 1033–34 (5th Cir. 2022) (quotations omitted). A harm does not qualify as irreparable when it is "merely possible" that the harm will occur, as opposed to "likely," or when the harm amounts to "speculat[ion]" or "unfounded fear." *Id.* (quotations omitted); *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 585 (5th Cir. 2013).

Here, Plaintiffs cannot establish that they suffered *any* harm, let alone an irreparable one. That is so because Plaintiffs are not entitled to relief from the complained-of retrogression policies for all the reasons explained above: namely, because the agencies have sweeping discretion in establishing the policies by which they adjudicate adjustment of status applications. *Supra* Part III(A). And when an

---

[7] DOS and USCIS have also argued, and the Court agrees, that subject-matter jurisdiction may also be absent under 8 U.S.C. § 1252. Specifically, Defendants assert that the Supreme Court's recent decision in *Patel v. Garland*, 142 S.Ct. 1614, 212 L.Ed.2d 685 (2022), confirms that 8 U.S.C. § 1252(a)(2)(B) strips the Court of subject-matter jurisdiction to review a decision relating to an adjustment of status under 8 U.S.C. § 1255. The Court will request briefing from the parties on this issue concerning the potential dismissal of this case.

adjustment of status application is approved, that approval is a matter of grace, not a matter of right. *Id.*

Plaintiffs' alleged harms are also speculative and far from irreparable. Notably, a delay in obtaining lawful permanent residency will not cause Plaintiffs to be removed from the country so long as they maintain their employment authorizations. Likewise, that Plaintiffs' visas will retrogress does not mean that they will be "kicked out of the line" for lawful permanent residence. *Banerjee v. U.S. Citizenship & Immigr. Servs.*, No. 4:21-CV-3293, 2021 WL 4918183, at *3 (D. Neb. Oct. 21, 2021). To the contrary, Plaintiffs will keep their spots in line and may become eligible again for lawful permanent residence when new visas become available. It is therefore entirely possible that the Court's refusal to enjoin the retrogression policies will have no effect on the timing by which Plaintiffs' applications are adjudicated. In the meantime, Plaintiffs will not suffer any injuries except for the alleged inconveniences associated with maintaining their current immigration status. If those injuries are irreparable, Plaintiffs have not explained how. It is also entirely possible that the agencies will ultimately *deny* Plaintiffs' adjustment of status applications—a possibility that renders Plaintiffs' alleged harms even more speculative.

Finally, the balance of equities and public interest factors also cut against the requested preliminary injunction. It would be both inequitable and offend the public interest to enjoin the Defendants from enforcing policies that are statutorily committed to their discretion and beyond the scope of judicial review.

## IV. CONCLUSION

Plaintiffs' Motion for a Temporary Restraining Order or Preliminary Injunction, (Dkt. #4), is **DENIED**.

**So ORDERED and SIGNED this 30th day of June, 2023.**

SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE